778 So.2d 374 (2001)
BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., Appellant,
v.
Angela STECK, Appellee.
No. 2D00-932.
District Court of Appeal of Florida, Second District.
January 17, 2001.
Charles C. Lane of Lau, Lane, Pieper, Conley & McCreadie, P.A., Tampa, for Appellant.
Charles P. Schropp of Schropp, Buell & Elligett, P.A., Tampa, for Appellee.
*375 PER CURIAM.
Blue Cross and Blue Shield of Florida, Inc. appeals the summary judgment in favor of Angela Steck, which found as a matter of law that Ms. Steck's health insurance policy with Blue Cross covered certain hospital and medical expenses she incurred when she was hit by a vehicle while attempting to cross a busy street. We affirm.
For purposes of the summary judgment, the parties stipulated that the unfortunate accident in which Ms. Steck was involved was occasioned by her inebriated condition. At 11:00 P.M. one night in June 1997, she stepped off a curb to cross a busy multilane highway into the path of an oncoming vehicle that had the right of way. Witnesses to the accident testified by deposition that the driver of the vehicle was not at fault and could not have avoided hitting her. Ms. Steck was hospitalized for fifty-three days, ultimately lost a leg, and incurred hospital bills in excess of $350,000. Her blood alcohol level at the time she was admitted to the hospital was more than three times the legal limit.[1]
At the time of the accident, Ms. Steck was covered by a "Conversion Option III" health insurance contract issued by Blue Cross. The policy contained an exclusion couched in the following language:
This contract does not provide benefits for: ... a condition resulting from you being drunk or under the influence of any narcotic unless taken on the advice of a physician.
[Emphasis added.] When Blue Cross discovered that she was inebriated when she stepped in front of the oncoming car, it refused to pay her hospital and other health care expenses based on the quoted exclusion.
Ms. Steck then filed this breach of contract and declaratory action against Blue Cross seeking a determination that Blue Cross should pay her medical expenses under this policy. Blue Cross answered and denied any obligation to pay contract benefits based on the exclusionary language. After the issue was joined, cross-motions for summary judgment were filed. The trial court granted Ms. Steck's motion and denied Blue Cross's, citing Mason v. Life & Casualty Insurance Co. of Tennessee, 41 So.2d 153 (Fla.1949) (Mason I), and Mason v. Life & Casualty Insurance Co. of Tennessee, 41 So.2d 155 (Fla.1949) (Mason II). This appeal then ensued.
Mason I and Mason II were based on two different life insurance contracts but covered the same insured. Ms. Mason was intoxicated and riding in a taxicab outside of Pensacola, Florida, when she ordered the driver to stop and let her out on a dark, deserted stretch of road in the early morning hours. While walking along the paved portion of this road in her inebriated condition, she was hit by truck properly using the highway. She died as a result of her injuries. The two insurance policies paid double benefits if death resulted from accidental causes.
The policy in Mason I also stated that the accidental death benefit did not cover death "resulting directly from the use of intoxicating liquors or narcotics." Mason I, 41 So.2d at 154 (emphasis added). The Florida Supreme Court held the exclusion inapplicable and the double benefits payable, reasoning:
This provision of the policy is plain, simple and unambiguous and plainly refers to the effect of the use of intoxicating liquors upon the system of an assured as distinguished from acts committed by him by reason of his being under the influence of, or his mind being affected by, intoxicants....
To bring a cause of death within such an exception clause of a policy, the burden is on the insurer to show that the use of intoxicants by the assured was *376 voluntary and that it was the direct cause of death.
Id. at 155 (citations omitted). Because the supreme court found that the direct cause of Ms. Mason's death was being struck by the truck, her inebriated condition was only a "remote cause." Id. at 155. Therefore, the exclusionary language of this first policy was inapplicable.
Similar, but not identical, exclusionary language in the policy in Mason II stated: "This policy does not cover ... loss or injury resulting from the use of intoxicating liquors." Mason II, 41 So.2d at 155 (emphasis added). The supreme court, without much explanation, held this exclusionary language also inapplicable, stating:
We see no valid distinction between the facts of this case and the companion case referred to above [Mason I]. In our view, the judgment in this case, as was the judgment in the companion case, must be reversed because of the failure of the insurance company to show that the death of the insured was within the exception clause of the policy.
Mason II, 41 So.2d at 155-56.
Mason I and Mason II demonstrate that two types of injuries may result from one's intoxication: direct injury, i.e., injury to biological systems of a person, such as acute alcohol poisoning or liver damage; and indirect injuries, such as accidental injuries caused by the behavior of the person while intoxicated. Ms. Mason's and Ms. Steck's injuries were clearly the latter kindindirect injuries. The trial court found, and we agree, that the language of Ms. Steck's policy was like the exclusionary language of Mason II. Blue Cross's exclusionary language in Ms. Steck's policy was not specific enough to exclude from coverage indirect injuries as well as direct injuries. Consequently, Mason II is controlling, as the trial court concluded.
The language of insurance policies must be construed liberally in favor of the insured and strictly against the insurer who prepared the policy, and exclusionary clauses must be construed more strictly than coverage clauses. See Purrelli v. State Farm Fire & Cas. Co., 698 So.2d 618 (Fla. 2d DCA 1997); see also Prudential Property & Cas. Ins. Co. v. Swindal, 622 So.2d 467 (Fla.1993); State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Florida, Inc., 678 So.2d 397 (Fla. 4th DCA 1996), affirmed, 711 So.2d 1135 (Fla.1998); Florida Farm Bureau Ins. Co. v. Birge, 659 So.2d 310 (Fla. 2d DCA 1994); Triano v. State Farm Mut. Auto. Ins. Co., 565 So.2d 748 (Fla. 3d DCA 1990). Like the supreme court did in construing the policy language in Mason II, we must construe Ms. Steck's policy narrowly against the insurer, i.e., only direct injuries will be excluded from coverage.
Blue Cross has valiantly argued that subsequent case law and changes in the insurance statutes have shown that Mason I and Mason II are aberrations now inconsistent with controlling authorities. We do not agree. The changes in the statute merely codified what insurance companies had previously excluded, as in the Mason cases. See ch. 28027, Laws of Fla. (1953).[2] The language of the various policies that subsequent case law has interpreted is different enough from the language in Ms. Steck's policy to explain the differing outcomes of those cases. For example, the exclusionary language of the policy examined in Harris v. Carolina Life Insurance Co., 233 So.2d 833, 833-34 (Fla.1970),[3] is an *377 excellent example of the type of exclusion Blue Cross clearly thought it had provided but did not: "EXCEPTIONS: Death ... resulting directly or indirectly, wholly or partially from any of the following causes are risks not assumed under this policy:... c. Bodily injury while under the influence of alcohol or drug...."
Because the trial court properly relied on the controlling authority of the Mason cases and correctly construed the exclusionary language of Ms. Steck's policy, we affirm.
NORTHCUTT and CASANUEVA, JJ., concur.
ALTENBERND, A.C.J., concurs specially.
ALTENBERND, Judge, Concurring.
I fully concur in this opinion, but do not wish to leave insurance companies with the impression that a different outcome would be guaranteed if the exclusion contained the phrase "direct or indirect, wholly or partially." Section 627.629, Florida Statutes (2000), permits an insurance company to include the following exclusion in a health insurance contract:
Intoxicants and Narcotics: The insurer will not be liable for any loss resulting from the insured being drunk or under the influence of any narcotic unless taken on the advice of a physician.
I am inclined to believe that Mason I and Mason II limit such an exclusion, as explained in the majority opinion, to direct injuries. Without clearer legislative intent, I question whether a health insurance or life insurance policy that is marketed to the general public should contain an exclusion for indirect injuries occurring when the insured is "drunk."
A person is "drunk" when operating a motor vehicle if he or she has a blood alcohol level of .08 gram per alcohol per 100 milliliters of blood. See § 316.193, Fla. Stat. (2000). Even though driving under the influence is a crime in Florida, there currently is no statutory authorization for an alcohol exclusion in a Florida No-fault Automobile Insurance PIP policy. See § 627.736(2), Fla. Stat. (2000). When the no-fault laws were first enacted, the legislature did permit an alcohol exclusion in a PIP policy if the circumstances involved a conviction for DUI. See ch. 71-252, § 7, Laws of Fla. See also Travelers Indem. Co. of Am. v. McInroy, 342 So.2d 842 (Fla. 1st DCA 1977). Experience with that exclusion caused the legislature to withdraw its authorization in 1982. See ch. 82-243, § 554, Laws of Fla.
If the legislature does not permit an indirect alcohol exclusion in a PIP policy, even though DUI is a crime, I question whether such an exclusion is or should be permissible in other types of health, life, and accident insurance. It is completely lawful for people to consume alcoholic beverages in the privacy of their home or at a social gathering. I am not convinced that the legislature intended section 627.629 to allow insurance companies to deny health insurance benefits to an insured merely because the insured had a blood alcohol level in excess of .08 at the time of an accident unrelated to an automobile. I am not convinced that parents should have no health coverage for a teenager who sustains bodily injuries while experimenting with alcohol.
It is possible that insurance companies should be allowed to market policies with an indirect alcohol exclusionat a lower premium-to insureds who abstain from alcohol. However, to place this exclusion *378 into a typical health insurance policy would create more problems than it would solve.
NOTES
[1] It was probably higher at the time of the accident because she was given 4.7 liters of intravenous fluids in the half-hour period between the accident and the blood draw.
[2] Chapter 28027, Laws of Florida (1953), permitted health insurers to include the following exclusionary language:

INTOXICANTS and NARCOTICS: The insurer shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any narcotic unless administrated on the advice of a physician.
[3] The supreme court in Harris v. Carolina Life Insurance Co., 233 So.2d 833 (Fla.1970), did not construe any exclusionary language but instead was confronted with a petition for writ of certiorari wherein Ms. Harris claimed that the decision of the district court finding the exclusion denied coverage despite no fault on the part of the insured, Harris v. Carolina Life Insurance Co., 226 So.2d 710 (Fla. 4th DCA 1969), conflicted with Mason v. Life & Casualty Insurance Co. of Tennessee, 41 So.2d 153 (Fla.1949) (Mason I). The supreme court found the Fourth District's decision did conflict with Mason I and quashed Harris, holding instead that an insurer has the burden to show that there is some causal relationship between the injury or death and the intoxication before the exclusion is held to be effective. See Harris, 233 So.2d at 834-35.