LOGUE, J.
American Heritage Life Insurance Company (“the Insurer”) appeals a final summary judgment that awarded the proceeds of an accidental death and dismemberment policy to Carmen Morales, the beneficiary under the policy (“the Beneficiary”). For the reasons explained below, we reverse and remand for entry of judgment for the Insurer.
FACTS AND PROCEDURAL HISTORY
Javier Lopez (“the Insured”) purchased an accidental death and dismemberment policy from the Insurer. The policy contained an alcohol exclusion provision excluding from coverage “any loss incurred as a result of ... any injury sustained while under the influence of alcohol or any narcotic unless administered upon the advice of a physician.” Sometime during the night of July 31, 2011, the Insured died in a crash while operating a jet ski in Biscayne Bay. Citing the alcohol exclusion provision, the Insurer denied the Beneficiary’s claim for proceeds under the life insurance policy. The Beneficiary filed this lawsuit as a result. After discovery was taken, the parties cross-moved for summary judgment.
The record for the summary judgment motions included the deposition and exhibits of the Florida Fish and Wildlife Conservation Commission officer who investigated the accident, his investigation file to the extent it was attached as an exhibit to the deposition, and the affidavit of a maritime safety expert hired by the Beneficiary. The record reflects the following undisputed facts.
The Insured was last seen alive around 10:00 p.m. on July 31, 2011, when he left an island north of the Venetian Causeway in the Intracoastal Waterway. When the Insured failed to return, the Coast Guard was called and a search of the area located the jet ski at approximately 4:00 a.m. on the north side of the Julia Tuttle Causeway. The Insured’s body was found later that morning at approximately 7:44 a.m. on the south side of the causeway. The autopsy report indicated the cause of death was multiple blunt force traumatic injuries sustained in a front-end collision with a fixed object. The toxicology report indicated that the Insured’s blood alcohol level was .10, which is above the legal limit of .08 in Florida.
The investigator for the Fish and Wildlife Conservation Commission issued a report which contained the following conclusions:
[The Insured] operated Vfehicle] 1 in violation of Florida State Statute 327.89(3) which states, a person may not operate a personal watercraft at any time between the hours from one-half hour after sunset to one-half hour before sunrise.
[The Insured] operated Vfehicle] 1 in violation of Florida State Statute 327.33(1) which states, it is unlawful to operate a vessel in a reckless manner. A person is guilty of reckless operation of a vessel who operates any vessel, or manipulates any water skis, aquaplane, or similar device, in willful or wanton disregard for the safety of persons or property at a speed or in a manner as to endanger, or likely to endanger, life or limb, or damage the property of, or injure any person.
[The Insured] operated V[ehicle] 1 in violation of Florida State Statute 327.35(l)(b) which states, boating under the influence if the person is operating a vessel within this state and the person is under the influence of alcoholic beverages ... when affected to the extent that the person’s normal faculties are impaired. Medical Examiners toxicolo *162 gy report shows [the Insured] had a BAC level of 0.10....
The Commission’s investigator concluded that “this is an alcohol related case” and “alcohol contributed to the accident.”
The Beneficiary’s expert agreed that the Insured was operating the jet ski with a blood alcohol level in excess of the legal limit and that the Insured collided with a fixed object. The Beneficiary’s expert, however, opined that the Insured’s blood alcohol level was not the sole cause of the accident because other factors contributed to the accident, including: (a) the Insured’s operation of the water craft in a negligent or reckless manner; (b) the dark nighttime conditions; and (c) the Insured’s failure to keep a watchful eye on his surroundings. Although not disputing that the Insured’s blood alcohol level contributed to the accident, the Beneficiary’s expert opined that “it does not mean [alcohol] was the cause of the accident.” (emphasis added). In the expert’s opinion, “for one to say alcohol was the cause of the accident is pure speculation.” (emphasis added).
The trial court granted the Beneficiary’s motion for summary judgment, denied the Insurer’s, and ordered the Insurer to pay the policy benefits to the Beneficiary. This appeal followed.
ANALYSIS
We are reviewing the granting of final summary judgment, which is subject to the de novo standard. Fla. Bar v. Greene, 926 So.2d 1195, 1200 (Fla.2006). “Summary judgment is designed to test the sufficiency of the evidence to determine if there is sufficient evidence at issue to justify a trial or formal hearing on the issues raised in the pleadings....” Id. It is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(c).
There is no issue of fact in this record, whether alcohol contributed to the accident. Alcohol was clearly a contributing factor. The Insured’s blood alcohol content is prima facie evidence that he was under the influence of alcoholic beverages to the extent that his normal faculties were impaired. § 327.354(2)(c), Fla. Stat. (2013). It is universally known that drivers under the influence of alcohol are a danger to themselves and others because they are more prone to drive negligently. Common sense indicates that such impairment is implicated when an intoxicated driver collides with a fixed object. The investigating officer expressly concluded that alcohol contributed to the accident. The Beneficiary’s expert, although opining that alcohol may not be the sole cause of the accident, did not deny that alcohol was at least a contributing cause.
This appeal thus focuses on the narrow and purely legal issue whether, in order for an alcohol exclusion provision in a first party accidental death policy to exclude coverage, the insurer must prove that the insured’s intoxication was one factor that contributed to the accident or the sole cause of the accident. In this regard, the Beneficiary argues that the exclusion operates to deny coverage only if alcohol was the sole cause of the accident and no other concurring causes that might be covered by the policy contributed to the accident. In support of this contention, she cites to Wallach v. Rosenberg, 527 So.2d 1386 (Fla. 3d DCA 1988).
In Wallach, the insureds filed suit against their insurer to collect under an all-risk policy for damage to their seawall. The all-risk policy contained a provision that excluded damages resulting from earth movement or storms but covered damages from human negligence. Id. at 1387. The insured’s sea wall toppled when *163 their neighbor’s negligently-built seawall collapsed after a large storm saturated the soil behind the neighbor’s seawall, exerting pressure greater than the faulty seawall could withstand. Id. at 1386. This court upheld a jury verdict that resulted from a jury instruction imposing upon the insurer “the burden of proof to show by the greater weight of the evidence that the exclusion in the insurance policy was the sole, proximate cause of damage or loss to the property....” Id. at 1389.
The Beneficiary’s reliance on Wallach is misplaced because it involved an all-risk property policy and not an accidental death policy. In Wallach, we expressly based our decision on both “the liberal construction generally given all-risk insurance contracts” and the insurer’s higher burden to establish that a claim came within an exclusion under an all-risk policy. Id. at 1388-89. Differences between types of insurance policies cannot be ignored. See Blue Cross & Blue Shield of Fla., Inc. v. Steck, 818 So.2d 465, 465 (Fla.2002) (distinguishing between alcohol exclusions in life and health insurance policies).
Focusing on the cases involving the type of exclusion and policy at issue in this case, an alcohol exclusion provision in an accidental death policy will serve to bar recovery of benefits if there is “some” causal relationship between the insured’s intoxication and his death. Harris v. Carolina Life Ins. Co., 233 So.2d 833, 834-35 (Fla.1970); American Heritage Life Ins. Co. v. English, 786 So.2d 1280, 1282 (Fla. 5th DCA 2001). It is unnecessary for the insured to prove that alcohol was the sole cause of the death. See Harris, 233 So.2d at 834-35; English, 786 So.2d at 1282.
In Harris, for example, the Florida Supreme Court interpreted an alcohol exclusion provision in an accidental death policy.[1] In that case, the insured was intoxicated and riding as a passenger in an automobile when he was killed in a car crash. Harris, 233 So.2d at 833. The parties conceded that no causal connection existed between the accident and the insured’s intoxication. Id. Citing to the broad language of the policy’s alcohol exclusion provision, however, the insurer argued that the provision excluded coverage whether or not the insured’s intoxication played any role in his death. Id. at 834. The Court rejected this argument.
In holding that the alcohol exclusion did not operate to prevent coverage in Harris, the Court began its analysis by acknowledging that the exclusion at issue, if read literally, would “deny liability for the accidental death in an automobile collision of a person being transported in an ambulance simply on the ground that the victim of the accident was under sedation at the time.” Id. at 834. To avoid this unreasonable result, the Court announced the current rule: “we hold that an insurance has the burden to show some causal relationship between the death and the intoxication in order for the exclusionary provision to be effective.” Id. at 834-35 (emphasis added). This holding is at odds with the Beneficiary’s argument that the Insurer must show that alcohol was the sole cause.
The Fifth District applied the rule in Harris to facts remarkably similar to our *164 case. In English, the insured entered into a life insurance policy that included an alcohol exclusion provision identical to the one in this case.[2] 786 So.2d at 1281. The insured in English was killed in a car accident, and his beneficiary brought suit to obtain the life insurance policy’s benefits. On the night of the accident, the insured drove an automobile which hit two fixed objects. When a paramedic arrived on the scene, the insured informed the paramedic that he fell asleep at the wheel. Id. at 1280. “The paramedic noted the distinct smell of alcohol on [the insured’s] breath and a blood-alcohol test result of .189 confirmed that he had been driving while under the influence.” Id. at 1280-81. The insured died of his injuries shortly afterwards. The trial court held that the exclusion did not apply, but the Fifth District reversed.
The alcohol exclusion provision applied, the Fifth District held, because the insurer met its burden of showing a causal relationship between the insured’s accident and intoxication. Id. at 1282. The court reached that conclusion despite the possibility that fatigue may have caused the insurer to fall asleep at the wheel: “Whether [the insured] fell asleep as a result of fatigue or the effects of alcohol, we believe that [the insurer] carried its Harris burden to show a causal relationship between death and intoxication.” Id. The court noted that, unlike the insured in Harris who was a passenger, the insured in English was the driver of the vehicle and therefore “the instrument that caused the vehicle to crash....” Id. at 1281.
The rule announced in Harris and applied by the court in English controls here. Because no genuine issues of material fact exist concerning whether the Insured’s alcohol intoxication contributed to his death, the Insurer carried its burden to show sufficient causal relationship between death and intoxication. Thus, the alcohol exclusion provision excluding from coverage “any loss incurred as a result of ... any injury sustained while under the influence of alcohol” applies to the facts of this case.
Reversed and remanded for entry of judgment in favor of the Insurer.

. The language of the alcohol exclusion provision in Harris stated the following:
Death ... resulting directly or indirectly, wholly or partially from any of the following causes are risks not assumed under this policy:
(c) Bodily injury while under the influence of alcohol or drug....
233 So.2d at 833-34.

. The life insurance policy in English contained the following alcohol exclusion provision: "[This] policy does not cover any loss incurred as a result of ... Any injury sustained while under the influence of alcohol or any narcotic unless administered upon the advice of a physician.” 786 So.2d at 1281.